694 P.2d 1241

**Truman Victor DeFOREST,
Petitioner-Appellant,**

v.

**Jeanne C. DeFOREST,
Respondent-Appellee.**

**No. 1 CA–CIV 7624.**

Court of Appeals of Arizona,
Division 1,
Department A.

Jan. 24, 1985.

James R. Phillips, Tempe, for petitioner-appellant.

Gloria Aguilar, Phoenix, for respondent-appellee.

## OPINION

BROOKS, Judge.

The primary issue on this appeal is whether the trial court erred in entering a decree of dissolution *nunc pro tunc.*

On February 27, 1981, Truman V. DeForest (husband) filed a petition for dissolution of his marriage with Jeanne C. DeForest (wife). A default hearing was conducted on June 4, 1982 before the Honorable Cheryl K. Hendrix. The husband and counsel for both parties were present at the hearing. The agreement of the parties with respect to a property settlement was presented to the court. Judge Hendrix' minute entry order provides:

> Hearing on Default. Petitioner is present with counsel. Respondent is not present but is represented by counsel. No Court Reporter.
>
> Truman DeForest is sworn and testifies.

The Court finds that the parties have been domiciled in the State of Arizona for more than 90 days prior to filing petition. The conciliation provision of A.R.S. § 25–381.09 does not apply. The marriage of the parties is irretrievably broken.

IT IS ORDERED upon presentation of formal written Decree of Dissolution incorporating the agreement of the parties the marriage will be dissolved.

Believing that his marriage to Jeanne had been dissolved, Truman DeForest married another person on June 12, 1982.

On November 6, 1982, the court issued a minute entry noting the absence of a formal decree and placing the matter on the inactive calendar for dismissal on December 30, 1982. A stipulation for a continuance was filed and denied; an order permitting a continuance was entered on January 5, 1983; a minute entry dismissing the action, signed on November 16, 1982, was vacated on January 21, 1983. At this point neither party had presented a motion to set aside the default or a formal decree.

Trial was held on December 1st and 2nd, 1983 before the Honorable Stanley Z. Goodfarb. Judge Goodfarb entered a formal judgment dissolving the marriage as of June 4, 1982 *nunc pro tunc*. The judgment confirmed and enforced the terms to which the parties had stipulated at the default hearing.

The prior stipulation had included a spousal maintenance award to the wife of $585.00 a month. No spousal maintenance had been paid by the husband as of December, 1983. The judgment provided that the wife's spousal maintenance which had accrued from June of 1982 to the date of judgment was to be satisfied out of the husband's interest in the proceeds from the sale of their residence. Judge Goodfarb modified the original decree to terminate spousal maintenance as of January 6, 1984 on grounds of substantial and continuing changed circumstances.

The judgment directed that the parties' residence be sold pursuant to Rule V of the Domestic Relations Handbook, Maricopa County Superior Court, giving either party an opportunity to purchase the other's interest in the home. Each party was awarded any assets which he or she had acquired since the date of the default hearing. The husband received all interest in a written work which was begun during the marriage and was still in the draft writing stage at the time of trial. Each party was ordered to bear his or her own attorney's fees and costs.

The husband filed a timely notice of appeal from the judgment. He argues that it was error to hold him in arrears for spousal maintenance for 18 months. He contends that (1) the trial court could not enter judgment *nunc pro tunc* because judgment had not been rendered at the June 4, 1982 hearing and (2) the trial court improperly admitted the testimony of Judge Hendrix and certain documents into evidence.

## NUNC PRO TUNC JUDGMENT

■ Rule 58(a), Arizona Rules of Civil Procedure, permits entry of a judgment *nunc pro tunc* "in such circumstances and on such notice as justice may require...." The State Bar Committee notes following Rule 58 refer to the absence of any language in the rule specifying the circumstances under which entry of judgment *nunc pro tunc* is appropriate. According to the notes, such circumstances are best determined by reference to case law on that subject.

Several Arizona appellate decisions address the propriety of the entry of *nunc pro tunc* judgments in light of Rule 58 as amended in 1970. Two of these decisions involve the entry of a decree of dissolution *nunc pro tunc*.

In *Allen v. Allen*, 129 Ariz. 112, 628 P.2d 995 (App.1981), this court held that the trial court did not lose jurisdiction to enter a decree of dissolution *nunc pro tunc* where one of the parties died after the dissolution hearing but before a formal decree was presented to the court. The decision relied upon a substantial body of law which distinguishes between "rendition of judg-

ment" and "entry" of judgment. We held that where there had been a "rendition of judgment", i.e., the act of the court in pronouncing its judgment, death of a party did not deprive the court of jurisdiction to enter a decree of dissolution *nunc pro tunc* to the date of that rendition. Where a decision has been rendered, judgment *nunc pro tunc* is appropriate to reflect what was actually done. *See also Valley National Bank of Arizona v. Meneghin*, 130 Ariz. 119, 123–124, 634 P.2d 570, 574–575 (1981); *Feltman v. Coulter*, 111 Ariz. 295, 298, 528 P.2d 821, 824 (1974).

The husband has attempted to distinguish *Allen* on grounds that the minute entry in *Allen* indicated the trial court's present intent to adjudicate the controversy as reflected in definite findings of fact and orders that were not contingent upon a future occurrence. He argues that the minute entry in the instant case orders that "upon presentation of formal written Decree of Dissolution incorporating the agreement of the parties the marriage *will be* dissolved." Emphasizing the language "will be", he argues that the judgment of dissolution was contingent upon the presentation of a formal order. Thus, he concludes that the court did not render a judgment on June 4, 1982.

The husband also points out that there is authority to support the contention that a judgment may be both rendered and entered *nunc pro tunc*. *See Valley National Bank of Arizona v. Meneghin*, 130 Ariz. at 123–123, 634 P.2d at 574–575. However, he contends that rendition may occur *nunc pro tunc* only when delay is not caused by the party seeking the *nunc pro tunc* entry. He argues that both parties were responsible for the delay in the instant case and cannot obtain a *nunc pro tunc* rendition. We note, however, that in *Estate of Hash v. Henderson*, 109 Ariz. 174, 507 P.2d 99, modified, 109 Ariz. 258, 508 P.2d 334 (1973), our supreme court permitted entries of 200 dissolution decrees *nunc pro tunc* without reference to rendition of judgment or fault for delay in presenting the formal decrees. *Estate of Hash* emphasizes the court's concern with the possibility of bigamous rela-

tionships if *nunc pro tunc* judgments were not entered. Likewise, the fact of the husband's 1982 remarriage was a substantial concern of Judge Goodfarb. However, we do not find it necessary to decide whether the decree in the instant case could have been rendered *nunc pro tunc*. Rather, we find that the record supports the trial court's conclusion that a judgment had been rendered at the default hearing.

We first consider the alleged contingent nature of Judge Hendrix' 1982 order. It is evident that the minute entry language is expressed in the future tense. It is also clear that Judge Hendrix ordered the parties to present a formal decree encompassing the terms of their agreement. However, the minute entry refers to an existing agreement and implies its approval. It also makes factual findings which are the jurisdictional requisites for dissolution. We are unwilling to conclude that the use of "will be" in the context of the entire minute entry creates a conditional adjudication.

In *Allen*, this court found that a minute entry evidenced a pronouncement of judgment. However, we acknowledged that the hearing transcript indicated that the trial court had cautioned the parties that they were not divorced until entry of judgment. This cautionary language relating to the effective date of the judgment was held to have no bearing upon whether there had been an adjudication of the controversy, i.e., a rendition of judgment. Similarly, we do not find the minute entry language in question to be conditional with respect to rendition of judgment. It is more reasonably interpreted as an expression of the condition for *entry* of that judgment, i.e., to condition *entry* of judgment upon presentation of the formal decree incorporating the parties' agreement. Judge Hendrix correctly stated that dissolution was dependent upon a final formal judgment. See Rule 58(a), Arizona Rules of Civil Procedure. *See also Reid v. Reid*, 20 Ariz. App. 220, 221, 511 P.2d 664, 665 (1973).

The husband concedes that Judge Hendrix made present findings of fact neces-

sary to support dissolution of the marriage. See A.R.S. § 25–312. He further concedes reliance upon the judge's pronouncement at the hearing to conclude that he was free to remarry on June 12, 1982. Nevertheless, he argues that even if the use of "will be" did not make dissolution conditional, the terms of the property agreement were not expressly set forth in the minute entry. Therefore, he argues there was no rendition of judgment with respect to the property settlement. He argues that while dissolution of the marriage could be entered *nunc pro tunc*, the terms of the property agreement could not be so entered. This argument is, of course, self-serving because it would legitimize his second marriage but eliminate any obligation for spousal maintenance.

We agree that the minute entry alone does not express the terms of a property agreement. However, it does indicate that the hearing was in the nature of a default and implies the present existence of an agreement. To ascertain the existence and nature of the agreement, and the trial court's approval of that agreement, Judge Goodfarb looked beyond the minute entry. The husband argues that only the minute entry could be considered as evidence. We disagree.

## EVIDENCE RELEVANT TO RENDITION OF JUDGMENT

*Allen* holds that a minute entry is a proper method for showing the time of the rendition of judgment. However, the opinion does not discuss whether other evidence may be considered for that purpose.

In *State v. Johnson,* 113 Ariz. 506, 557 P.2d 1063 (1976), our supreme court upheld the trial court's entry of judgment *nunc pro tunc* based on the trial judge's minute entry statement that he had signed an order dismissing a criminal matter in which the phrase "without prejudice" had inadvertently been left out of the formal order. The trial judge stated that his intention at the time of signing the formal order was that the charges would be refiled. The opinion does not discuss whether the trial judge's personal recollection or other evidence of the previous rendition was considered by the trial judge in entering the *nunc pro tunc* judgment. Although we have found no Arizona case law directly addressing what evidence may properly be admitted to prove that a judgment has been rendered, other jurisdictions have considered this matter.

■ Whether the trial court has pronounced judgment orally from the bench and the terms of that pronouncement are questions of fact. *See Piggott Junior Chamber of Commerce v. Hollis,* 242 Ark. 205, 412 S.W.2d 595 (1967); *Bockemehl v. Bockemehl,* 604 S.W.2d 466, 469 (Tex.Civ. App.1980).

At least one jurisdiction has held that a judge's recollection alone is sufficient evidence to support a finding that a judgment has been rendered and to allow entry of judgment *nunc pro tunc* based on such evidence. *See Mogford v. Mogford,* 616 S.W.2d 936, 942 (Tex.Civ.App.1981); *Bockemehl v. Bockemehl,* 604 S.W.2d 466 (Tex. Civ.App.1980). Other courts require some written record rather than the personal recollection of the judge by itself. *See e.g., Levy v. Winans,* 464 S.W.2d 763, 764 (Mo. App.1970).

Several Illinois decisions, relying in part upon a rule of procedure, require that proof of rendition must be founded upon "some note or memorandum from the records or quasi records of the court [citation omitted] or upon anything in the record before the court from which certainty is assured without reliance upon the judge's memory alone." *Kooyenga v. Hertz Equipment Rentals, Inc.,* 79 Ill. App.3d 1051, 35 Ill.Dec. 382, 399 N.E.2d 216, 219–220 (1979). *See also In re Marriage of LaReno,* 113 Ill.App.3d 755, 69 Ill.Dec. 514, 447 N.E.2d 949, 953 (1983). One Illinois appellate decision expressly finds that the trial judge's original notes made during the trial and notations of instructions given to the attorneys concerning provisions to be incorporated in the decree may be considered as evidence of the terms of the judgment. *See Dauderman v. Dauderman,* 130 Ill.App.2d 807, 810, 263 N.E.2d 708, 710–11 (1970).

Other jurisdictions have found that judges' notes and recollection, court files, and any other oral or written evidence that is otherwise competent is properly admitted to establish the fact of rendition. *See e.g., Piggott Junior Chamber of Commerce, Inc. v. Hollis,* 412 S.W.2d at 596–97; *Book v. Everitt Lumber Co.,* 218 Kan. 121, 128, 542 P.2d 669, 675 (1975); *Bower v. Butcher,* 171 Neb. 452, 106 N.W.2d 689, 691 (1960); *State v. Coleman,* 110 Ohio App. 475, 169 N.E.2d 703, 706 (1959).

█ In the instant case the trial court considered both testimony of Judge Hendrix and notes that Judge Hendrix had made during the default hearing. The husband objected to the admission of this evidence. His primary contention on appeal is that it was not relevant evidence because only the minute entry could be considered as proof of rendition. We are persuaded by the above cited authorities that the testimony of the trial judge who presided at the hearing and the notes which were made at the hearing is probative evidence of the fact of rendition and the terms of the judgment. Thus, we find no error by the trial court in admitting such evidence if it was otherwise competent.

## OTHER EVIDENTIARY OBJECTIONS

The husband has also raised other objections to admitting testimony from Judge Hendrix, her notes and a proposed formal decree of dissolution signed by the husband. We must therefore determine whether other factors required the trial judge to refuse to admit that evidence.

The husband first argues that Judge Hendrix' testimony and notes plus the proposed form of decree signed by the husband were in the nature of settlement negotiations and should have been excluded. *See* Rule 408, Arizona Rules of Evidence. *See also Truck Insurance Exchange v. Hale,* 95 Ariz. 76, 386 P.2d 846 (1963); *Youngren v. Rezzonico,* 25 Ariz.App. 304, 543 P.2d 142 (1975). He next argues that Judge Hendrix lacked sufficient personal knowledge of the events about which she testified and that her testimony should

have been excluded pursuant to Rule 602, Arizona Rules of Evidence.

Judge Hendrix' testimony was that she had no present recollection of the 1982 default hearing. However, she had maintained notes of the proceedings as it was her custom to do. The original notes were partially in shorthand. Her secretary typed out the notes and the original and typed transcript were admitted into evidence.

After reviewing her notes, Judge Hendrix testified that the notes and minute entry were consistent in showing that the parties had reached a settlement which included an agreement that the husband would pay the wife $585.00 per month as spousal maintenance.

Counsel for the husband made two objections during the course of Judge Hendrix' testimony. His first objection came after the wife's counsel asked several questions of Judge Hendrix regarding her normal procedures at default hearings. The husband's objection was:

MR. PHILLIPS: Your Honor, I would object to this line of questioning about what normally is done. Either the witness can recall what was done in this case or not. If not, it's irrelevant and immaterial, I would submit. I would object to the line of questioning.

THE COURT: I would sustain the objection, but solely because a foundation has not been laid for this period of time in default hearings with regard to domestic relations matters. She can testify to that if she doesn't have a precise recollection of this particular matter.

█ No objection was made to Judge Hendrix' testimony on the basis of lack of personal knowledge or that her testimony related to settlement negotiations. For the first time, the husband argues on appeal that the judge's testimony should have been excluded on these grounds. Failure to make an objection to the trial court precludes that objection being raised for the first time on appeal. *See James v. Cox,* 130 Ariz. 152, 156, 634 P.2d 964, 968 (App. 1981); *Shell Oil Co. v. Gutierrez,* 119 Ariz. 426, 437, 581 P.2d 271, 282 (App.1978).

A timely objection was made to admission of a proposed form of decree signed by the husband on grounds that it constituted settlement negotiations. The trial court overruled that objection stating that the document would be admitted for the limited purpose of indicating the husband's understanding concerning spousal maintenance at the time of the default hearing.

Evidence of offers to compromise or settlement negotiations must be excluded where offered to prove liability or invalidity of a claim or its amount. However, such evidence does not have to be excluded merely because it is presented in the course of compromise negotiations. Rule 408, Arizona Rules of Evidence. The husband testified that he had never been aware of the $585.00 monthly award of spousal maintenance until Judge Hendrix ordered him to pay it. The document showed that he had signed a proposed decree prior to the hearing which provided for $585.00 per month as spousal maintenance. The trial judge expressly stated that the document was not admitted to prove the terms of the agreement approved by Judge Hendrix. The proposed judgment was properly admitted for the limited purpose of showing his knowledge of the proposed $585.00 spousal maintenance award.

The husband's final contention is the trial court committed reversible error by receiving Judge Hendrix' notes as evidence. He objected at trial on grounds that the notes were hearsay and of no probative value. As previously discussed, we find that such notes are probative with respect to whether judgment has been rendered. We now consider whether the notes should have been excluded as hearsay.

The trial court found that the notes fell within exceptions to the hearsay rule either as a recorded recollection pursuant to Rule 803(5) or as having equal guarantees of trustworthiness pursuant to Rule 803(24), Arizona Rules of Evidence.

Rule 803(5) provides in part:

A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

As the husband correctly points out, the judge's notes were not simply read into evidence but were themselves received as an exhibit. Thus, admission was not in compliance with Rule 803(5).

The wife concedes that if admission of the notes themselves was based simply on Rule 803(5), their admission would have been error. However, she contends it would have been harmless error. Several commentators have indicated that the purpose of Rule 803(5) is to prevent a jury from according undue emphasis to the written word. *See McCormick on Evidence*, § 299 at 865 (Cleary, 3d Ed.1984); S. Saltzburg and K. Redden, *Federal Rules of Evidence Manual*, p. 577 (3d Ed.1982); 4 *Weinstein's Evidence*, ¶ 803(5)[1] at 803–168 (1984); 3 Wigmore, *Evidence* § 754(5) (Chadbourn rev. 1970). *See also United States v. Judon*, 567 F.2d 1289, 1294 (5th Cir.1978), appeal after remand, 581 F.2d 553. Thus, she argues that since this matter was heard by the court sitting without a jury, the error was harmless. We agree.

We also note that after making an objection to the notes based on hearsay grounds, counsel for the husband did not raise the specific objection which he now raises when the trial judge held the notes admissible pursuant to Rule 803(5). He did contend that the notes had refreshed Judge Hendrix' memory, arguably implying that the judge had sufficient recollection of the events to preclude admission of the notes. Judge Hendrix stated, however, that she had no independent recollection of the proceedings. She did recall some events from reviewing the notes. However, total lack of memory of the event which is the subject of the recorded recollection does not bar admission of that recorded recollection. Advisory Committee Notes, Fed.R.Evid.

803(5), 56 F.R.D. 183, 306 (1972). *See also United States v. Senak*, 527 F.2d 129 (7th Cir.1975), *cert. denied*, 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976).

In summary, we find sufficient evidence to support the trial court's determination that judgment had been rendered on June 4, 1982. We further find no reversible error with respect to the admission of Judge Hendrix' testimony and notes and the proposed decree signed by the husband. Consequently, there was sufficient evidence to support the trial judge's conclusion that default judgment had been rendered and his findings concerning the substantive provisions of that judgment. Where there is evidence to support the judgment, it must be affirmed on appeal. *Paul Schoonover v. Ram Const., Inc.*, 129 Ariz. 204, 205, 630 P.2d 27, 28 (1981). We find that the trial court acted well within its discretion in entering the decree of dissolution *nunc pro tunc*.

The judgment of the trial court is affirmed.

HAIRE, P.J., and GRANT, J., concur.